UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT TRCKA, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 1854 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Trcka brought this suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*., alleging that a U.S. Postal Service truck rear-ended his vehicle at a stop light, causing him injury. Doc. 13. Without objection from the United States, the court granted summary judgment to Trcka on the question whether the postal truck was operated negligently. Doc. 35. A bench trial was held on causation and damages, Docs. 64, 66, and the parties filed written closing arguments, Docs. 67, 68, 69.

Pursuant to Federal Rule of Civil Procedure 52(a), the court enters the following Findings of Fact and Conclusions of Law. To the extent that any Findings of Fact may be considered Conclusions of Law, they shall be deemed Conclusions of Law, and vice versa. After considering the evidence and assessing the witnesses' credibility, the court awards judgment to Trcka in the amount of $315,754.70.

**Findings of Fact**

    **A.**    **The Accident**

    1.    On April 5, 2014, in St. Charles, Illinois, a postal truck struck Trcka's car from behind while he was stopped at a red light. Tr. 20:8-21:13.

1

2. Trcka suffered a whiplash injury as a result of the impact. Tr. 317:24-318:3.

3. Injury to the facet joints in the neck is one of the most common causes of whiplash-associated pain. Tr. 326:4-8.

4. Upon returning home after the accident, Trcka felt severe pain in his back and neck, had a headache, and experienced dizziness. Tr. 25:14-18.

### B. Treatment Immediately Following the Accident

5. Trcka went to the Delnor Hospital emergency room for treatment of his symptoms. *Ibid*. He was examined, had x-rays taken, received pain medication, and was referred to a physical therapist. Tr. 25:25-26:2; Pl. Ex. A at 5. Trcka was charged $1,766 in connection with this hospital visit. Pl. Ex. 3.

6. Trcka went to see his personal physician, Dr. John Vaikutis, on April 8, 2014. Tr. 27:1-3. Dr. Vaikutis noted that Trcka's headache and dizziness had "dissipated" since the accident, but that his back was still "tender." Def. Ex. A at 5. Vaikutis agreed that Trcka should receive physical therapy. Tr. 27:8-12.

7. Trcka attended fifteen physical therapy sessions from April 10, 2014 to June 5, 2014. Pl. Ex. 7. He was charged $7,503.06 for those sessions. *Ibid*.

8. Trcka reported progressively diminishing lower back pain at his first nine physical therapy sessions. Pl. Ex. 6 at 21, 34, 48, 62, 76, 90, 104, 118, 130. On May 21, 2014, Trcka told his physical therapist that he had no pain in his lower back. *Id*. at 150. Trcka continued to report that he had no pain in his lower back at subsequent physical therapy sessions. *Id*. at 162, 175, 189, 201, 206.

9. Trcka saw Dr. Vaikutis again on May 22, 2014. Def. Ex. A at 15. Trcka told Dr. Vaikutis that his lower back was feeling much better, but that he was still having issues with his neck and right shoulder, despite some improvement. *Id*. at 17.

10. Trcka believes that the physical therapy sessions gave him no relief from his neck and shoulder pain. Tr. 31:17-22.

11. At his final physical therapy session on June 5, 2014, Trcka stated that he was still having trouble with his shoulder pain, but that he would like to place physical therapy on hold and try to manage his pain independently. Pl. Ex. 6 at 206.

### C. Trcka's Attempt to Manage His Pain Without Treatment

12. Trcka continued to experience pain in his neck, right shoulder, and arm, without improvement, in Summer 2014. Tr. 37:8-19; Pl. Ex. A at 33, 42.

13. During that timeframe, Trcka often had trouble sleeping due to the pain, which forced him to sleep sitting up in a chair. Tr. 37:8-16; Pl. Ex. 4 at 39.

14. Trcka's difficulty sleeping was exacerbated by a preexisting sinus condition, which occurred seasonally and caused a post-nasal drip that would also force Trcka to sleep sitting up. Tr. 18:2-25; Def. Ex. A at 30.

15. Trcka saw Dr. Vaikutis on September 3, 2014 for his pain and difficulty sleeping. Pl. Ex. 4 at 39. Dr. Vaikutis ordered an MRI on Trcka's cervical spine. Def. Ex. A at 45.

16. The total cost of Trcka's office visits to Dr. Vaikutis regarding his pain was $582. Pl. Ex. 5.

### D. MRI at Central DuPage Hospital

17. On September 4, 2014, Trcka received an MRI on his cervical spine at Central DuPage Hospital ("CDH"). Tr. 38:9-14; Pl. Ex. 8 at 6. The cervical spine comprises the seven

3

uppermost vertebrae, all located in the neck. *Dorland's Online Illustrated Medical Dictionary* (32d edition 2014) (defining "cervical spine" and "cervical vertebrae").

18. The MRI, as well as x-rays taken during Trcka's visit to the emergency room after the accident, revealed age-associated spinal degeneration that made Trcka's back more susceptible to injury and pain. Tr. 142:17-19, 158:18-19, 224:14-23.

19. In particular, the MRI revealed a "diffuse disc/osteophyte complex" at the C-5/C-6 disc in Trcka's neck. Pl. Ex. 9 at 6. That condition developed with age and was not caused by the accident. Tr. 224:14-23.

20. An injury to the cervical facet joints often cannot be detected in an MRI. Tr. 139:7-11, 140:13-141:25.

21. The cost of the MRI was $4,195.75. Pl. Ex. 9 at 2.

### E. Treatment at Central DuPage Hospital

22. On October 1, 2014, Trcka began a second round of physical therapy at CDH. Tr. 38:15-19.

23. On October 20, 2014, Trcka saw the pain specialist at CDH, Dr. Edward Yang. Tr. 39:13-16. Trcka complained of neck pain that radiated through his right shoulder and arm. Pl. Ex. 10 at 2.

24. Dr. Yang gave Trcka an epidural steroid injection in his cervical spine. Tr. 39:24-40:1. The injection itself was very painful, Tr. 40:2-41:1, but gave Trcka immediate relief, Tr. 41:7-11.

25. After the pain returned, Trcka received another injection from Dr. Yang on November 6, 2014. Tr. 42:1-12.

26. Trcka ended his second round of physical therapy on November 14, 2014. Tr. 43:22-24. The physical therapist noted that Trcka did not exhibit any functional impairments or limitations on his activity. Pl. Ex. 8 at 173; Tr. 260:10-16.

27. Trcka was able to manage his pain with aspirin and home exercise for several months, Tr. 44:5-12, but he returned for another cervical spine injection on July 14, 2015, Tr. 45:14-19, and then another on August 10, 2015, Pl. Ex. 10 at 13-14.

28. This second round of injections gave Trcka the same relief as the first round. Tr. 46:2-4.

29. Trcka next visited Dr. Yang on May 26, 2016. Pl. Ex. 10 at 17. Trcka told Dr. Yang that he had recently begun experiencing lower back pain that radiated into his right leg. *Ibid*. The lower back is referred to as the lumbar spine, which comprises the five vertebrae between the rib cage and the pelvis. *See Dorland's* (defining "lumbar spine" and "lumbar vertebrae").

30. This was the first time Trcka had mentioned lower back pain since the physical therapy sessions immediately following the accident, nearly two years earlier. Tr. 330:2-21. It was the first time that Trcka had ever complained of pain in either leg. Tr. 297:19-21.

31. Trcka testified that his upper back pain "moved down [to] my lower back as time moved on." Tr. 37:21-22.

32. Trcka returned to Dr. Yang to begin a new round of cervical injections on October 14, 2016. Pl. Ex. 10 at 22-25. At that time, Trcka reported that, in addition to the familiar pain radiating from his neck and upper back to his right shoulder and arm, he had also been experiencing pain radiating to his left shoulder and arm for the prior month. *Id*. at 22.

33. Trcka received another cervical injection on November 11, 2016. *Id*. at 26-27. At that appointment, Dr. Yang noted that the pain radiating into Trcka's left shoulder and arm had been resolved, but that the right leg pain had been aggravated by increased yard work. *Id*. at 27.

34. At some point in December 2016, Trcka slipped on ice and sat down on his buttocks while trying to move a long object from the back of his car. Tr. 49:3-11, 101:19-24.

35. Trcka received another cervical injection on December 23, 2016. Pl. Ex. 10 at 28-29. Dr. Yang noted that Trcka had received "100% relief" after the first two injections, until his slip on the ice. *Id*. at 29.

36. Trcka injured his left biceps during the slip, and he received treatment from Dr. Yang for the pain. Tr. 49:12-16.

37. The December 23, 2016 injection is the most recent injection that Trcka has received in his cervical spine.

38. The cost of the physical therapy, pain injections, and office visits related to Trcka's upper back pain at CDH totaled $37,707.89. Pl. Exs. 9, 11.

39. The government's expert witness, Dr. David Dickerson, testified that he would defer to Dr. Yang's judgment that this course of treatment, including the pain injections, was reasonable and necessary. Tr. 338:20-25, 340:18-341:13, 342:11-343:6.

    **F. Treatment by Dr. Scott Glaser**

40. On April 14, 2017, at the request of his attorney in this suit, Trcka saw another pain specialist, Dr. Scott Glaser, so that Dr. Glaser could prepare an assessment for this case. Tr. 53:12-15, 133:9-13.

41. At that time, Trcka reported that he was experiencing mild pain in his neck, upper back, and both shoulders and arms. Pl. Ex. 12 at 14; Pl. Ex. 27 at 1. He also complained of pain in his right buttocks and leg. Pl. Ex. 27 at 2.

42. Shortly thereafter, Trcka made the independent decision to see Dr. Glaser, rather than Dr. Yang, as his regular pain management specialist. Tr. 54:12-15, 133:9-13.

43. Trcka's first appointment as Dr. Glaser's patient was on May 9, 2017. Pl. Ex. 12 at 1. Trcka complained of bilateral pain in his legs and buttocks, which Dr. Glaser noted "began 4 weeks ago." *Ibid*. That was the first time Trcka complained of pain in his left buttocks and leg. Tr. 297:16-18. (Trcka had complained of lower back pain for approximately two months after the accident, and on May 26, 2016 he complained of pain in his lower back and right leg. *Supra*, ¶¶ 8, 29.)

44. Since his initial appointment with Dr. Glaser, Trcka has made six office visits and has received pain injections on five occasions—three in his lower back, and two in his knee. Pl. Ex. 12.

45. None of Dr. Glaser's treatment notes from any of Trcka's appointments mention that he is experiencing pain in his upper back, neck, arms, or shoulders. Tr. 293:13-18.

46. On May 31, 2017, Dr. Glaser recommended that Trcka resume physical therapy and referred him to a physical therapy clinic. Pl. Ex. 12 at 7.

47. Trcka has not resumed physical therapy. Tr. 299:19-21.

### G. Impairments to Trcka's Life Caused by the Accident

48. According to Trcka, as of the date of trial, January 29, 2018, the pain in his upper and lower back has subsided, as it typically does after receiving an injection, and he is "doing okay." Tr. 56:15-57:4.

49. Prior to the accident on April 5, 2014, Trcka had no chronic pain of any kind. Tr. 17:9-18:1.

50. Before the accident, Trcka regularly worked out with a trainer to control his weight and diabetes. Tr. 19:1-18.

51. Trcka has been unable to work out at the same level since the accident, and has started taking more medication for his diabetes. Tr. 57:6-59:1.

52. Trcka has not gained weight since the accident. Tr. 57:12-15, 96:23-99:4; Pl. Ex. 27 at 4.

53. Trcka was an avid golfer before the accident. Tr. 63:13-64:4. He has been unable to golf since the accident due to his pain. Tr. 64:5-14.

54. Due to his pain, Trcka does not sleep as well as he used to. Tr. 63:9-12.

55. The pain inhibits Trcka's ability to spend time with his grandchildren. Tr. 64:21-24.

### H. Anticipated Future Treatment

56. Dr. Glaser testified that the injuries to Trcka's cervical and lumbar spine are permanent. Tr. 160:19-161:13.

57. Dr. Glaser predicted that Trcka would require ongoing physical therapy to deal with his pain, at an annual cost of $3,000 to $6,000. Tr. 167:8-168:2; Pl. Ex. 27 at 6.

58. Dr. Glaser predicted that Trcka would need three cervical pain injections per year, at an average cost of $4,000 per injection. Tr. 168:3-10; Pl. Ex. 27 at 6.

59. Dr. Glaser predicted that Trcka would also need three lumbar pain injections per year, also at an average cost of $4,000 per injection. Tr. 168:19-25; Pl. Ex. 27 at 6.

60. Dr. Dickerson does not believe that there is sufficient documentation or testing to conclude that Trcka injured his cervical facet joints in the accident. Tr. 313:10-314:7. That said, Dr. Dickerson testified that it is "not unusual at all" for pain resulting from a facet injury to subside for several months after a pain injection but ultimately to return. Tr. 348:16-24. Dr. Dickerson also testified that, on his review of the medical records, it appeared that Trcka "made a significant recovery" from the pain in his neck, upper back, and right shoulder and arm as a result of his physical therapy sessions in 2014. Tr. 295:15-19.

61. Dr. Glaser predicted that Trcka "more likely than not" would eventually decide to discontinue injections and obtain a permanent spinal cord stimulator, at a total cost of $155,000 to $200,000. Tr. 169:1-171:15, 178:20-179:7.

62. Trcka is currently 69 years old. Tr. 13:9-10.

63. A life expectancy table from the National Vital Statistics Reports shows that Trcka's life expectancy is 15.1 years. Pl. Ex. 28 (National Vital Statistics Reports, Vol. 66, No. 3 (Apr. 11, 2017), Table 2).

### I. Administrative Claim

64. In May 2014, Trcka submitted an administrative claim to the Postal Service regarding this accident, demanding $500,000 in damages for his injuries. Def. Ex. E at 1.

## Conclusions of Law

Illinois tort law governs the substantive issues in this FTCA suit because the accident took place in Illinois. *See Arpin v. United States*, 521 F.3d 769, 776 (7th Cir. 2008); *Carter v. United States*, 333 F.3d 791, 793 (7th Cir. 2003). "To establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Swearingen v.*

9

*Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011).  As noted, the court previously granted summary judgment to Trcka on the questions of duty and breach.  Doc. 35.  The remaining issues are causation—specifically, the extent to which the accident caused Trcka's pain—and the extent of any damages.

**I.      Causation**

The April 5, 2014 accident injured the facet joints in Trcka's cervical spine.  On this point, the court finds Dr. Glaser's testimony more persuasive than Dr. Dickerson's.  Indeed, Dr. Dickerson never expressed the view that Trcka did not injure his cervical facet joints in the accident; he merely observed that no test was ever performed to confirm the diagnosis.  Tr. 313:10-314:7.  Trcka's facet injuries have caused him to suffer chronic pain in his neck and upper back that radiates into his right shoulder and arm.  Trcka has experienced this pain ever since the crash, although it subsides for months at a time after he receives epidural injections.  The United States argues that physical therapy resolved the pain in Trcka's cervical spine, and observes that the pain was not limiting Trcka at his final physical therapy appointment in November 2014.  Doc. 28 at 21.  But that pain relief coincided with Trcka's first round of injections.  If the physical therapy had truly resolved Trcka's cervical pain, he would not have had the need for additional painful injections in the following months.  Trcka has shown by a preponderance of the evidence that the cervical injury was caused by the accident, that the injury is permanent, and that he will continue to experience pain from the injury for the rest of his life.  On this point, Dr. Dickerson agreed that it was "not unusual at all" for pain resulting from cervical facet injuries to subside after an injection and then return.

However, Trcka has not shown by a preponderance of the evidence that the accident caused his current pain in his lower back, buttocks, and legs.  The accident did cause Trcka some

temporary lower back pain, but that pain disappeared within two months. Trcka did not complain of lower back pain again until May 26, 2016, when he told Dr. Yang that pain was originating in his lower back and radiating to his right leg. By contrast, Trcka's lower back pain in the two months after the accident did not radiate to his lower extremities. Apparently, this new radiating pain soon subsided before coming back to stay—Trcka reported to Dr. Glaser on May 9, 2017 that his lower back pain, which was now radiating to his buttocks and left leg as well as his right leg, had begun only "4 weeks ago."

Trcka has not provided a convincing medical explanation of how, if the accident had permanently injured his lumbar spine, the pain could have quickly subsided and remained minor or non-existent for at least two years, only to reappear in an altered form. Dr. Glaser's opinion that Trcka injured his lower back in the accident rests largely, if not exclusively, on the fact that he currently has lower back pain. Tr. 144:19-22. That is not persuasive. Rather, it is far more likely that, given the age-related degeneration that made Trcka's spine more susceptible to injury, a series of minor strains—including yard work and Trcka's slip in December 2016—caused the pain radiating from Trcka's lower back to his buttocks and legs.

## II. Damages

### A. Medical Expenses

Trcka is entitled to damages for the "reasonable expense of necessary medical care" for treating the pain stemming from the cervical facet injury he sustained in the accident, as well as for the emergency treatment he received immediately after the accident. Illinois Pattern Jury Instructions, Civil No. 30.06; *see Arthur v. Catour*, 833 N.E.2d 847, 853 (Ill. 2005). Trcka's past expenses for the emergency and subsequent treatment of the pain in his neck, upper back, and right shoulder and arm, which are enumerated above, total $51,754.70. The record demonstrates

by a preponderance of the evidence that those expenses, including all of the cervical pain injections, were reasonable and necessary under the circumstances.

Trcka also is entitled to damages for necessary medical expenses that are "reasonably certain" to be incurred in the future. I.P.I. (Civil), No. 30.06; *see Bruntjen v. Bethalto Pizza, LLC*, 18 N.E.3d 215, 254 (Ill. App. 2014); *Poliszczuk v. Winkler*, 899 N.E.2d 1115, 1126 (Ill. App. 2008). Trcka seeks compensation for three types of future treatment: physical therapy, pain injections, and a spinal stimulator. Doc. 67 at 6. Dr. Glaser also mentioned the possibility of spinal fusion surgery, Tr. 189:1-7, but Trcka abandoned any claim for the expenses of such a surgery by failing to mention the surgery in his summation brief.

It is not reasonably certain that Trcka will incur future expenses for physical therapy. Trcka believes that the physical therapy sessions in 2014 did not alleviate his pain, and he has not received any physical therapy since, even though Dr. Glaser recommended in May 2017 that he resume it. The evidence does not suggest that Trcka will change his mind.

It is reasonably certain that Trcka will require cervical pain injections in the future. Trcka needs pain treatment in order to live a normal life. The injections have been Trcka's most effective form of pain relief, and he has needed multiple injections annually to keep the pain in his neck, upper back, and right arm and shoulder at a manageable level. The two injections Trcka received in October and November 2014 sufficed for approximately eight months. The effect of the next two injections, in July and August 2015, lasted for fourteen months, until Trcka received two more injections in October and November 2016. He received "100% relief" from those last two injections, but required a third after his slip in December 2016. At the time of trial, approximately thirteen months after the last injection on December 23, 2016, Trcka was "doing okay" and was not planning to receive another injection any time soon.

Based on Trcka's injection history, the court concludes that he will require two injections every fourteen months for the rest of his life. Trcka's life expectancy is 15.1 years, or 181.2 months. That means Trcka is likely to require 26 more injections (2 x 181.2 / 14 = 25.9). Trcka submits that the average cost of a cervical injection is approximately $4,000. Based on Trcka's past medical bills, the court agrees that $4,000 is a reasonable sum. Therefore, Trcka is entitled to $104,000 for future cervical pain injections.

It is not reasonably certain that it will be medically necessary for Trcka to receive a spinal stimulator. Dr. Glaser testified that patients who, like Trcka, respond well to injections will "more likely than not" end up electing to get a spinal stimulator because they get tired of the pain always returning. But the injections have worked for Trcka so far, and there is no indication that their effect is waning. And because the injections appear to be a sufficient treatment for Trcka's pain, a spinal stimulator would not be a "necessary" medical expense.

**B.     Non-Economic Damages**

Trcka is entitled to damages for the past and future pain and suffering caused by the accident. I.P.I. (Civil), No. 30.05; *see Stift v. Lizzadro*, 841 N.E.2d 126, 132 (Ill. App. 2005). He is also entitled to damages for the loss of his normal life—primarily, his ability to play golf and work out as he did before the accident, and his ability to spend time with his grandchildren. I.P.I. (Civil), No. 30.04.02; *see Stift*, 841 N.E.2d at 134. When awarding non-economic damages after a bench trial, the court should "conside[r] awards in similar cases" rather than "pluck[ing]" a number "out of the air." *Arpin*, 521 F.3d at 776.

Both parties have submitted verdicts from vehicle accident cases that they believe to be comparable to Trcka's. Doc. 68 at pp. 27-28, ¶ 35; Doc. 69-1. The verdicts submitted by the United States all involve whiplash injuries that were less serious than Trcka's. None of the

plaintiffs in those cases were awarded damages for future medical expenses, indicating that, unlike Trcka, none had developed chronic pain requiring ongoing treatment. *See* Doc. 68 at pp. 27-28, ¶ 35. The total non-economic damages in those cases ranged from $780 to $150,000, with an average of $61,956 and a median of $64,000. *Ibid*.

Trcka submitted three cases that delineate which portion of the verdict was for non-economic damages. The most similar of those cases to this one is *Ross v. Walton*, No. 06-L-8711 (Cir. Ct. Cook Cnty.), in which the plaintiff was rear-ended and developed chronic neck and back pain that required him to undergo annual treatments. Doc. 69-1 at 4. The jury awarded $60,000 for pain and suffering and $60,000 for loss of normal life. *Ibid*. The two other cases involved more severe spinal injuries that were sustained after head-on highway collisions. *Id*. at 1-2. The plaintiff in one of those cases, who suffered injuries to several spinal discs, received $242,000 in non-economic damages. *Id*. at 2. There were two plaintiffs in the other case. One received $125,000 in non-economic damages and the other, who suffered two herniated discs and later underwent spinal fusion surgery, received $375,000. *Id*. at 1. The plaintiff who received lower non-economic damages received much higher damages for his medical expenses, and his total recovery was higher. *Ibid*.

On the basis of these jury awards, as well as the particular circumstances of Trcka's case, the court finds that Trcka is entitled to $80,000 for past and future pain and suffering, and $80,000 for loss of normal life.

## Conclusion

For the foregoing reasons, the court finds that Trcka is entitled to these damages:

    Past Medical Expenses:    $51,754.70

    Future Medical Expenses:    $104,000

        Pain and Suffering:        $80,000

        Loss of Normal Life:       $80,000

The court will enter judgment in favor of Trcka in the amount of $315,754.70.

May 8, 2018                                       _____
                                                      United States District Judge